Juan Hong (State Bar No. 234046)
Law Office of Juan Hong, A Law Corp.
4199 Campus Drive, Suite 550
Irvine, CA 92612
Phone: (949) 509-6505
Fax: (949) 335-6647
Email: jhong48@gmail.com

Attorney for Plaintiff
SUE SHIN

United States District Court
For the Central District of California

| | |
|---|---|
| SUE SHIN, Individually and On Behalf of All Others Similarly Situated <br><br> vs. <br><br> CAMPBELL SOUP COMPANY, and DOES 1 through 10. <br><br> Defendants. | Case No. <br><br> <u>CLASS ACTION</u> <br> **COMPLAINT FOR:** <br> (1) VIOLATION OF CAL. BUS. & PROF. CODE §17200: Unlawful Conduct <br> (2) VIOLATION OF CAL. BUS. & PROF. CODE §17200 Unfair and Fraudulent <br> (3) VIOLATION OF CAL. BUS. & PROF. CODE §17500 *et seq.* <br> (4) VIOLATION OF CAL. CIVIL CODE §1750 *et seq.* <br> (5) UNJUST ENRICHMENT/ BREACH OF QUASI CONTRACT |

1 (COMPLAINT)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**INTRODUCTION**

1.      Plaintiff Sue Shin ("Plaintiff"), individually and on behalf of all others similarly situated, brings this Class Action Complaint against Campbell Soup Company. ("Defendant"), and on the basis of personal knowledge, information and belief, and investigation of counsel, alleges as follows:

2.      In the United States, tens of thousands of Americans die each year of heart disease, stroke, or other chronic conditions tied to hypertension from long-term overconsumption of sodium compounds.  Major strides to lower dietary sodium have been made over decades, but the goal of reducing Americans' daily consumption is elusive.  The Food and Drug administration (FDA) has been urged to consider stronger regulatory limits on sodium, especially in processed and prepared foods. (Hodge JR Jr, Barraza LF, Legal Regulation of Sodium Consumption to Reduce Chronis Conditions. Prev Chronic Dis 2016; 13: 150545.)

3.      An estimated 1.65 million deaths from cardiovascular disease globally in 2010 were attributed to excessive sodium intake over time. (Mozaffarian D, Fahimi S, Singh GM, Micha R, Khatibzadeh S, Engell RE, et al.;Global Burden of Diseases Nutrition and Chronic Diseases Expert Group.  Global sodium consumption and death from cardiovascular causes.  N Eng J Med 2014; 371(7): 624-34.)

4.      This action deals with the following five products by Defendant ("the CAMPBELL Products"):

(1) Cream of Mushroom 25% Less Sodium, (2) Chicken Noodle 25% Less Sodium, (3) Cream of Chicken 98% Fat Free, (4) Swanson Natural Goodness Broth Chicken 33% Less Sodium, (5) Cream of Mushroom 98% Fat Free.  On October 11, 2016, Plaintiff bought the products (1) through (4) from Albertsons located at 1735 Artesia Blvd., Gardena, CA 90247.  This action covers ***"similar products"*** by Defendant in violation of lack of the disclosure statement which is required by 21 USC 331(a) prohibiting the introduction or delivery for introduction

into interstate commerce of any food, drug, device, tobacco product, or cosmetic that is adulterated or misbranded.  This action also covers ***similar products*** by Defendant in misleading reasonable consumers to believe that the products are healthy pursuant to 9 CFR 381.463.

5.      "The CAMPBELL Products" are canned soup line that Defendant manufactures, markets, and sells.

6.      Defendant labels the CAMPBELL Products with prominent claim, "25% Less Sodium," "33% Less Sodium," and "98% Fat Free" which consumers perceive to mean that the canned soups are healthy.  They are not healthy foods because they contain sodium at a higher level.

7.      The "Nutrition Facts" on the side panel shows that the CAMPBELL Products with the "25% Less Sodium," "33% Less Sodium," and "98% Fat Free" claims contains sodium at a higher level than the sodium content of 480 mg above which the food is disqualified for healthy food.  Product (1) Cream of Mushroom 25% Less Sodium contains sodium at 650mg per serving.  Product (2) Chicken Noodle 25% Less Sodium contains sodium at 660mg.  A mark of "Inspected For Wholesomeness by the US Department of Agriculture" is printed on its label.  Product (3) Cream of Chicken 98% Fat Free contains sodium at 750mg.  A mark of "Inspected For Wholesomeness by the US Department of Agriculture" is printed on its label.  Product (4) Swanson Natural Goodness Broth Chicken 33% Less Sodium contains sodium at 570mg.  Product (5) Cream of Mushroom 98% Fat Free contains sodium at 750mg.  The disclosure statement that "See nutrition information for sodium content" must be in immediate proximity to the "25% Less Sodium," "33% Less Sodium," and "98% Fat Free" claims, which is a requirement by the Food and Drug Administration.  In fact, nowhere in the label shows the required disclosure statement for (1), (2), and (3).  The disclosure statement for (4) is not in immediate proximity to "33% Less Sodium."  The disclosure statement

for (5) is not in immediate proximity to "99% Fat Free."  The disclosure statement for (5) is not "conspicuous or prominent" to be easily legible.

8.     When Plaintiff purchased the CAMPBELL Products, she did not read the "Nutrition Facts."  Plaintiff would not have purchased the CAMPBELL Products had she known that the sodium content exceeds the disqualifying level.

9.     Plaintiff's claim is essentially that, because defendant's labels did not comply with state and federal requirements regarding the disclosure statement, she could not see or did not understand the disclosure, and therefore was misled by the unlawful packaging and purchased the product based thereon.  Defendant's products are technically misbranded.  Plaintiff was misled as a result of the misbranding and suffered economic injury because she purchased the products she otherwise would not have.

**NATURE OF THE ACTION**

10.     Defendant ensnared Plaintiff and thousands of other consumers-victims ("Class") in a fraudulent scheme nationwide to sell Defendant's canned soup line. Plaintiff purchased the CAMPBELL Products.  Defendant uniformly misled Plaintiff and the Class that they would buy the CAMPBELL Products.

11.     Plaintiff brings this class action on behalf of herself and all other similarly situated consumers who purchased the CAMPBELL Products asserting claims under California's Unfair Competition Law, Cal. Bus. & Prof. Code §17200, *et seq*. ("UCL" or "§17200"); the Consumer Legal Remedies Act, Cal. Civ. Code §1750, *et seq*. ("CLRA"); the False Advertising Law, Cal. Bus & Prof. Code §17500, *et seq*. ("FAL" or "17500"); Unjust Enrichment/ Breach of Quasi Contract.

12.     Plaintiff seeks damages and equitable relief on behalf of herself and the Class, which relief includes, but is not limited to, the following: their monetary damages; restitution; refunding Plaintiff and class members the full amount paid

for the CAMPBELL Products; injunctive relief for an order enjoining Defendant from falsely marketing and advertising the CAMPBELL Products; punitive damages; costs and expenses, including attorneys' and expert fees; interest; and any additional relief that this Court determines to be necessary or appropriate to provide complete relief to Plaintiff and the Class.

## JURISDICTION AND VENUE

13.    This Court has original jurisdiction over this action under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2) ("CAFA"), as to the named Plaintiff and every Class Member, because the proposed Class contains more than 100 members, the aggregate amount in controversy exceeds $5 million, and Class Members reside across the United States and are therefore diverse from Defendant.

14.    The Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367(a).  Plaintiff has filed affidavits showing that this action has been commenced in a proper county pursuant to Cal. Civ. Code §1780(d).

15.    This Court has personal jurisdiction over Defendant because it has significant minimum contacts with this State, and intentionally availed itself of the laws of California by transacting a substantial amount of business throughout the State and this District, including but not limited to, the promotion, marketing, advertising, and sale of the CAMPBELL Products throughout California and Los Angeles County, and on the Internet to consumers located throughout California and Los Angeles County.

16.    Venue is proper under 18 U.S.C. § 1965(a), because Defendant is subject to personal jurisdiction in this District as alleged above, and Defendant has agents located in this District.

## PARTIES

17.   Plaintiff Sue Shin is a resident of the state of California.  Plaintiff learned about the CAMPBELL Products in 2016 when she saw advertisements searched and found in Google website and the CAMPBELL Products displayed in grocery stores in Gardena, California.  Plaintiff purchased the CAMPBELL Products in reliance on the Defendant's misrepresentations.

18.   On information and belief, Defendant Campbell Soup Company ("" Defendant" or "Defendant Campbell" or "Campbell") is a Delaware corporation with its principal place of business in New Jersey, 1 Campbell's Place, Camden, New Jersey 08103

19.   The true names and capacities, whether individual, corporate, associate, or otherwise, of defendants sued herein as DOES 1 through 10 are unknown to Plaintiff, who therefore sues the DOE defendants by such fictitious names. Plaintiff will amend this complaint to show true names and capacities when they have been ascertained.  Defendants will refer to Campbell Soup Company, and DOES 1 through 10.

**RELIANCE AND ECONOMIC INJURY**

20.   When purchasing the CAMPBELL Products, Plaintiff sought products that were healthy and low in sodium.

21.   Plaintiff read and relied on the misleading label of the CAMPBELL Products.

22.   Based on this reliance, Plaintiff believed the CAMPBELL Products had the aforementioned nutritional qualities she sought.

23.   Plaintiff would not have purchased the CAMPBELL Products (1) through (4) absent the misleading and deceptive labels.  Instead of receiving products which were healthful and/or low in sodium, Plaintiff received products that were not as healthful as she perceived.

24.    Plaintiff lost money as a result of Defendant's deceptive conduct because Plaintiff did not receive the products for which she paid.  In fact, Plaintiff bought the CAMPBELL Products which were prohibited from introduction into commerce because they were misbranded.  Plaintiff suffered damages in an amount to equal to the amounts she paid for the CAMPBELL Products she purchased.

25.    By engaging in false and misleading marketing, Defendant reaped, and continues to reap, increased sales and profits.

26.    Defendant knows that the qualities it markets are material to consumer's decision to purchase its CAMPBELL Products.

27.    Defendant deliberately cultivated the misrepresentations through its marketing of the CAMPBELL Products.

**CLASS ACTION ALLEGATIONS**

28.    Pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure, Plaintiff brings this action individually and on behalf of a proposed class defined as follows:

**The Injunctive Relief Class**.  All persons residing in the United States and its territories who purchased one or more of the CAMPBELL Products for their own use, and not for resale, since February 10, 2013.  Plaintiff asks the Court to adjudicate only liability, declaratory relief, and injunctive relief through the Injunctive Relief Class; the Injunctive Relief Class does not seek any form of monetary relief.

29.    Additionally, pursuant to Rule 23(a) and (b)(3), Plaintiff brings this action individually and on behalf of a proposed class (the "Monetary Relief Class") defined as follows:

**The Monetary Relief Class**. All persons residing in the United States and its territories who purchased one or more of the CAMPBELL Products for their own

use, and not for resale, since February 10, 2013.  Plaintiff asks the Court to adjudicate all remedies through Monetary Relief Class.

30.     Additionally, pursuant to Rule 23(a) and (b)(3), Plaintiff brings this action individually and on behalf of a proposed class (the "California Subclass") defined as follows:

**The California Subclass**.  All persons residing in the United States and its territories who purchased one or more of the CAMPBELL Products for their own use, and not for resale, since February 10, 2013.  Plaintiff asks the Court to adjudicate all remedies through the California Subclass.

31.     Collectively, the Injunctive Relief Class, the Monetary Relief Class, and the California Subclass are the "Class."

32.     This action is properly brought as a class action for violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code §17200 ("UCL"), California's Consumers Legal Remedies Act, Cal. Civ. Code §1750 ("CLRA"), California's False Advertising Law, Cal. Civ. Code §17500 ("FAL"), and Unjust Enrichment/Breach of Quasi Contract, for the following reasons:

(a) the proposed Class is so numerous and geographically dispersed throughout the United States that the joinder of all class members is impracticable.  While Plaintiff does not know the exact number and identity of all Class Members, Plaintiff is informed and believes that there are thousands. The precise number of Class Members can be ascertained through discovery; (b) the disposition of Plaintiff's and proposed Class Members' claims in a class action will provide substantial benefits to both the parties and the Court; (c) the proposed Class is ascertainable and there is a well-defined community of interest in the questions of law or fact alleged herein since the rights of each proposed Class member were infringed or violated in the same fashion; (d) there are questions of law and fact common to the proposed class which predominate over any questions that may

affect particular Class Members. Such common questions of law and fact include, but are not limited to:

(1) Whether Defendant's conduct was unlawful, unfair or fraudulent;

(2) Whether Defendant's advertising and labeling is likely to deceive the public;

(3) Whether Defendant's conduct was false, misleading or likely to deceive;

(4) Whether Defendant violated California's Unfair Competition Law, Cal. Bus. & Prof. Code §17200 ("UCL");

(5) Whether Defendant violated California's Consumers Legal Remedies Act, Cal. Civ. Code §1750 ("CLRA");

(6) Whether Defendant violated California's False Advertising Law, Cal. Civ. Code §17500 ("FAL");

(7) Whether Defendant received purchase monies from Plaintiff and class members that they unjustly received;

(8) Whether Plaintiff and Class Members have been harmed and the proper measure of relief;

(9) Whether Plaintiff and Class Members are entitled to an award of punitive damages, attorneys' fees and expenses against Defendants; and

(10) Whether, as a result of Defendant's misconduct, Plaintiff and Class Members are entitled to equitable relief, and if so, the nature of such relief;

(e) Plaintiff's claims are typical of the claims of the members of the proposed Class.  Plaintiff and Class Members have been injured by the same wrongful practices of Defendant.  Plaintiff's claims arise from the same practices and conduct that give rise to the claims of all Class Members and are based on the same legal theories;

(f) Plaintiff will fairly and adequately protect the interests of the Class in that she has no interests antagonistic to those of the other Class Members, and Plaintiff has retained attorneys experienced in consumer class actions and complex litigation as counsel;

(g) A class action is superior to other available methods for the fair and efficient adjudication of this controversy for at least the following reasons: (i) Given the size of individual Class Member's claims and the expense of litigating those claims, few, if any, Class Members could afford to or would seek legal redress individually for the wrongs Defendant committed against them and absent Class Members have no substantial interest in individually controlling the prosecution of individual actions; (ii) This action will promote an orderly and expeditious administration and adjudication of the proposed Class claims, economies of time, effort and resources will be fostered and uniformity of decisions will be insured; (iii) Without a class action, Class Members will continue to suffer damages, and Defendant's violations of law will proceed without remedy while Defendant continues to reap and retain the proceeds of their wrongful conduct; and (iv) Plaintiff knows of no difficulty that will be encountered in the management of this litigation which would preclude class certification.

33.     Defendant and their agents had, or have access to, address information for the Class Members, which may be used for the purpose of providing notice of the class action.

34.     Plaintiff seeks damages and equitable relief on behalf of the Class on grounds generally applicable to the entire proposed Class.

## THE SCHEME TO DEFRAUD AND MISLEAD CONSUMERS

35.     Plaintiff can assert the "who, what, when, where, and how" to satisfy Federal Rule of Civil Procedure 9(b).

*who*: Defendant Campbell Soup Company.

*what*: misleading and misbranding statement: "25% Less Sodium," "33% Less Sodium," and "98% Fat Free" without the disclosure statement required by the Food and Drug Administration.  The products are not qualified to be healthy. ;

*when*: February 10, 2013 to the present;

*where*: front label of the CAMPBELL Products purchased at Albertsons on October 11, 2016, and commercial statements on the CAMPBELL Products viewed from Google website;

*how*: The statements are misleading because it is not accompanied by the disclosure statement and the products are not healthy because they contain sodium at high level.  It is unlawful that Defendant introduced the CAMPBELL Products into interstate commerce.  Plaintiff was fraudulently induced to buy unmarketable foods, the CAMPBELL Products.

## STATEMENT OF LAW

## UNLAWFUL CONDUCTS

36.    21 USC 331(a) prohibits the introduction or delivery for introduction into interstate commerce of any food, drug, device, tobacco product, or cosmetic that is adulterated or misbranded.

37.    California Health and Safety Code § 110395 states that: "It is unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food ….. that is falsely advertised."

38.    California Health and Safety Code § 110398 states that: "It is unlawful for any person to advertise any food, drug, device, or cosmetic that is adulterated or misbranded."

39.    California Health and Safety Code § 110390 states that: "It is unlawful for any person to disseminate any false advertisement or any food ….. An advertisement is false if it is false or misleading in any particular."  Under the Poultry Products Inspection Act ("PPIA"), poultry products cannot be sold if the product has labeling this is false and misleading. 21 USC § 457(c), § 607(d), 9 CFR § 381.129(a), § 317.8(a).

11 (COMPLAINT)

1

2

**MISBRANDED FOODS**

3

40.    21 U.S.C. § 343 provides that a "food shall be deemed misbranded" if, *inter*

4

*alia,* it contains a "false or misleading label," § 343(a); if information required on

5

the label is "not prominently placed" on the label in comparison with other words,

6

§ 343(f); if it does not properly identify nutrition information, for example, serving

7

size, number of servings, calories, and certain nutrients, § 343(q); or if it contains

8

improper "nutrition levels and health related claims," § 343(r) ("nutrient content

9

claims").

10

 41.    No state or political subdivision of a State may directly or indirectly

11

establish under any authority or continue in effect as to any food in interstate

12

commerce - "any requirement respecting any claim of the type described in section

13

343(r)(1) [nutrient content claims] of this title, made in the label or labeling of

14

food *that is not identical* to the requirement of section 343(r) of this title . . . ." (21

15

U.S.C. § 343-1(a) (5))

16

17

**CALIFORNIA SHERMAN LAWS**

18

42.    California's Sherman Laws adopt the federal labeling requirements as the

19

food labeling requirements of the state. Cal. Health & Safety Code § 110100 ("All

20

food labeling regulations and any amendments to those regulations adopted

21

pursuant to the federal act, in effect on January 1, 1993, or adopted on or after that

22

date shall be the food regulations of this state.").

23

(1) Any food is misbranded if its labeling is false or misleading in any particular,

24

Cal. Health & Safety Code § 110660;

25

(2) Any food is misbranded if its labeling does not conform with the requirements

26

for nutrition labeling set forth in Section 403(q) (21 U.S.C. Sec. 343(q)) of the

27

federal act and the regulations adopted pursuant thereto, id. § 110665;

28

12 (COMPLAINT)

(3) Any food is misbranded if its labeling does not conform with the requirements for nutrient content or health claims set forth in Section 403(r) (21 U.S.C. Sec. 343(r)) of the federal act and the regulations adopted pursuant thereto, id. §110670; (4) Any food is misbranded if any word, statement, or other information required to appear on the label or labeling is not prominently placed upon the label or labeling with conspicuousness, as compared with other words, statements, designs, or devices in the labeling and in terms as to render it likely to be read and understood by the ordinary individual under customary conditions of purchase and use, id. § 110705.

43.    By manufacturing, advertising, distributing, and selling misbranded products, the CAMPBELL Products, Defendant has violated California Health & Safety Code Sections 110660, 110670, 110705.  In addition, Defendant has violated the standards set by 21 U.S.C. Sec. 343 and its implementing regulations found in Title 21, Code of Federal Regulations, Part 101 (21 CFR 101), all of which have been adopted by reference into the Sherman Law.

44.    Consequently, Plaintiffs allege the following causes of action: (1) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 et seq., for unlawful, unfair, and fraudulent business acts and practices; (2) violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500 et seq., for misleading, deceptive, and untrue advertising; (3) violation of the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 et seq. (count 6); (4) restitution based on "Unjust Enrichment/Breach of Quasi Contract."

## NUTRIENT CONTENT CLAIMS AND DISCLOSURE STATEMENT

45.    The misbranded products are in violation of section 403 of the Federal Food, Drug, and Cosmetic Act (the Act) [21 U.S.C. § 343] and its implementing regulations found in Title 21, Code of Federal Regulations, Part 101 (21 CFR 101).

46.     Under section 403(r)(1)(A) of the Act, a claim that characterizes the level of a nutrient which is of the type required to be in the labeling of the food must be made in accordance with a regulation authorizing the use of such a claim.

47.     Characterizing the level of a nutrient on the food labeling of a product without complying with the specific requirements pertaining to nutrient content claims for that nutrient misbrands the product under section 403(r)(1)(A) of the Act.

48.     A nutrient content claim (NCC) is a claim on a food product that directly or by implication characterizes the level of a nutrient in the food (e.g., "low fat," "high in oat bran," or "contains 100 calories"). 21 CFR 101.13(b), 21 CFR 101.13(a)

49.     If a NCC is not included in FDA's regulations, it cannot be used on a label. (21 CFR 101.13(b))  NCCs are specifically defined in 21 CFR 101.13, Subpart D of part 101, and parts 105 and 107. 21 CFR 101.13(b).

50.     A variety of information is required depending on the claim and what information is needed to prevent the claim from being misleading.  Nutrition labeling is required for virtually all claims. 21 CFR 101.13(n)

51.     A disclosure statement is a statement that calls the consumer's attention to one or more nutrients in the food that may increase the risk of a disease or health-related condition that is diet related.  The disclosure statement is required when a nutrient content claim is made and when a nutrient in that food exceeds certain prescribed levels.  The disclosure statement identifies that nutrient (e.g. "See nutrition information for sodium content"). 21 CFR 101.13(h)(1)

52.     *Disqualifying nutrient levels* means the levels of total fat, saturated fat, cholesterol, or sodium in a food above which the food will be disqualified from making a health claim. These levels are 13.0 grams (g) of fat, 4.0 g of saturated fat, 60 milligrams (mg) of cholesterol, or 480 mg of sodium, per reference amount customarily consumed, per label serving size, and, only for foods with reference

14 (COMPLAINT)

amounts customarily consumed of 30 g or less or 2 tablespoons or less, per 50 g. 21 CFR 101.14 (a)(4)

53.     Under 21 CFR 101.13(h), if a food bears a nutrient content claim and also contains more than 13.0 grams of fat, 4.0 grams of saturated fat, 60 milligrams cholesterol, and 480 milligrams of sodium per reference amount customarily consumed (RACC), per labeled serving (or for a food with a RACC of 30 grams or less or 2 tablespoons or less, per 50 grams), then the food must bear a statement disclosing that the nutrient exceeding the specified level is present in the food as follows:  "See nutrition information for _____content" with the blank replaced with the identity of the nutrient exceeding the specified level.

54.     The disclosure statement must be in legible boldface type, in distinct contrast to other printed or graphic matter, and generally in a type size at least as large as the net quantity of contents declaration. It must also be placed immediately adjacent to the claim. 21 CFR 101.13(h)(4)(i)-(ii)

## NUTRIENT CONTENT CLAIMS FOR THE SODIUM CONTENT OF FOODS

55.     A food may bear a statement that compares the level of a nutrient in the food with the level of a nutrient in a reference food. These statements shall be known as "relative claims" and include "light," "reduced," "less" (or "fewer"), and "more" claims. 101.13(j)

56.     The claims bears the required information for relative claims as described in 21 CFR 101.13(j)(2) and 101.54(e)(1)(iii).  The label or labeling must state the identity of the reference food and the percentage (or fraction) of the amount of the nutrient in the reference food by which the nutrient in the labeled food differs (e.g., "50 percent less fat than (reference food)" or "1/3 fewer calories than (reference food)"). 101.13(j)(2)(i).  This information shall be immediately adjacent to the most prominent claim. 101.13(j)(2)(ii)

57.     The terms "reduced sodium," "reduced in sodium," "sodium reduced," "less sodium," "lower sodium," or "lower in sodium" may be used on the label or in labeling of foods provided that: The food contains at least 25 percent less sodium per reference amount customarily consumed than an appropriate reference food. 101.61(b)(6)(i).  As required for 101.13(j)(2) for relative claims, 101.61(b)(6)(ii) provides that: (A) The identity of the reference food and the percent (or fraction) that the sodium differs from the labeled food are declared in immediate proximity to the most prominent such claim (e.g., "reduced sodium ___, 50 percent less sodium than regular ___"); and (B) Quantitative information comparing the level of the sodium in the product per labeled serving with that of the reference food that it replaces (e.g., "Sodium content has been lowered from 300 to 150 mg per serving.") is declared adjacent to the most prominent claim or to the nutrition label, except that if the nutrition label is on the information panel, the quantitative information may be located elsewhere on the information panel in accordance with 101.2.  Products (1) Cream of Mushroom 25% Less Sodium and Product (4) Swanson Natural Goodness Broth Chicken 33% Less Sodium present (A) and (B) above not in conspicuous and easily legible boldface print in violation of 21 CFR 101.105(h) and 21 CFR 101.2(c).

**PROMINENT AND CONSPICOUS DISPLAY**

58.     The disclosure statement "See nutrition information for __ content" shall be in easily legible boldface print or type, in distinct contrast to other printed or graphic matter, and in a size no less than that required by §101.105(i) for the net quantity of contents statement, except where the size of the claim is less than two times the required size of the net quantity of contents statement, in which case the disclosure statement shall be no less than one-half the size of the claim but no smaller than one-sixteenth of an inch, unless the package complies with

16 (COMPLAINT)

§101.2(c)(2), in which case the disclosure statement may be in type of not less than one thirty-second of an inch. 101.13(h)(4)(i)

59.     Section 101.2(c) requires that information on the principal display panel or information panel must "appear prominently and conspicuously," while Section 101.15 lays out general factors that the FDA will consider in determining whether a given statement is sufficiently prominent and conspicuous. *See* 21 C.F.R. §§ 101.2(c), 101.15.

60.     Section 101.15(a) provides that a label statement "may lack [] prominence and conspicuousness" if the statement does not "appear on the part or panel of the label which is presented or displayed under customary conditions of purchase [*i.e.,* the principal display panel]." 21 C.F.R. § 101.15(a)(1)

61.     All information appearing on the principal display panel or the information panel pursuant to this section shall appear prominently and conspicuously, but in no case may the letters and/or numbers be less than one-sixteenth inch in height unless an exemption pursuant to paragraph (f) of this section is established. The requirements for conspicuousness and legibility shall include the specifications of 101.105(h) (1) and (2) and 101.15. (see 21 CFR 101.2 (c))

62.     The disclosure statement shall appear in conspicuous and easily legible boldface print or type in distinct contrast (by typography, layout, color, embossing, or molding) to other matter on the package; except that a declaration of net quantity blown, embossed, or molded on a glass or plastic surface is permissible when all label information is so formed on the surface. (see 21 CFR 101.105(h))

63.     The "Nutrition Facts" on the side panel shows that the CAMPBELL Products with the "25% Less Sodium," "33% Less Sodium," and "98% Fat Free" claims contains sodium at a higher level than the sodium content of 480 mg above which the food is disqualified for healthy food.  Product (1) Cream of Mushroom 25% Less Sodium contains sodium at 650mg per serving.  Product (2) Chicken Noodle 25% Less Sodium contains sodium at 660mg.  Product (3) Cream of

Chicken 98% Fat Free contains sodium at 750mg.  Product (4) Swanson Natural Goodness Broth Chicken 33% Less Sodium contains sodium at 570mg.  Product (5) Cream of Mushroom 98% Fat Free contains sodium at 750mg.  The disclosure statement that "See nutrition information for sodium content" must be in immediate proximity to the "25% Less Sodium," "33% Less Sodium," and "98% Fat Free" claims, which is a requirement by the Food and Drug Administration.  In fact, nowhere in the label shows the required disclosure statement for Products (1), (2), and (3).  The disclosure statement for Product (4) is not in immediate proximity to "33% Less Sodium."  The disclosure statement for Product (5) is not in immediate proximity to "99% Fat Free."  The disclosure statement for Product (5) is not "conspicuous or prominent" to be easily legible.  It is unlawful for Defendant to advertise the CAMPBELL Products that are misbranded and unmarketable.

## FEDERAL MEAT INSPECTION ACT (FMIA) and POULTRY PRODUCTS INSPECTION ACT (PPIA)

64.    The FDA regulates most food products, while the United States Department of Agriculture (USDA) is responsible for regulating the safety of meat and poultry products.  The USDA regulates the deceptiveness of the label statements at issue in this case for Product (2) Chicken Noodle 25% Less Sodium contains sodium at 660mg.  A mark of "Inspected For Wholesomeness by the US Department of Agriculture" is printed on its label.  Product (3) Cream of Chicken 98% Fat Free contains sodium at 750mg.  A mark of "Inspected For Wholesomeness by the US Department of Agriculture" is printed on its label.

65.    Congress enacted the Poultry Products Inspection Act ("PPIA") and the Federal Meat Inspection Act ("FMIA") to ensure, among other things, that poultry and meat products are properly labeled. 21 U.S.C. § 602, § 451.  Under the PPIA and the FMIA, meat and poultry products cannot be sold if the product has labeling

that is false or misleading. U.S.C. § 457(c), § 607(d); 9 C.F.R. § 381.129(a), § 317.8(a). In regulating the labeling of meat and poultry products, Congress has stated that labeling requirements "in addition to, or different than," those set forth under the PPIA and the FMIA may not be imposed by any state. 21 U.S.C. § 467e, § 678. However, Congress provided that states may, consistent with the requirements set forth under the PPIA and the FMIA, exercise concurrent jurisdiction with the United States Department of Agriculture ("USDA") to prevent the distribution of poultry and meat products that have labeling that is false or misleading. 21 U.S.C. § 453(h)(1), 601(n)(1). The states' concurrent jurisdiction has been interpreted to mean that states can impose sanctions for violations of state requirements that are equivalent to the FMIA and the PPIA's requirements.

66.    The regulations provide, with certain exceptions not relevant to this case, that no final labeling can be used on any meat or poultry product unless the sketch labeling of the final labeling has been approved by the Food Safety and Inspection Service ("FSIS"), which is an agency within the USDA. If a label submitted for review is determined to be false or misleading, the FSIS can prohibit the use of the label.

67.    The USDA, under FMIA and PPIA, is charged with ensuring that meat and poultry products are wholesome and unadulterated, and are properly branded and labeled with respect to those concerns. The USDA, through its FSIS, conducts sanitation inspections of slaughtering and packaging establishments and monitors limited aspects of certain labels to enforce standards of product composition or identity. 21 U.S.C. §§ 453(h), 457(b) & (c), 601(n), 607(b). FSIS makes sure that the USDA "Inspected and passed" stamps on labels are proper. 21 U.S.C. §§ 451 et seq., 601 et seq.

68.    Product (2) Chicken Noodle 25% Less Sodium contains sodium at 660mg, Product (3) Cream of Chicken 98% Fat Free contains sodium at 750mg, are not

healthy because they contain sodium at the level higher than 480mg. 9 CFR §
381.463.  Reasonable consumers are misled that Products (2) and (3) are healthy.

**9 CFR § 317.361 and § 381.461 Nutrient Content Claims for Sodium Content**

69.     The terms ''reduced sodium,'' ''reduced in sodium,'' ''sodium reduced,''
''less sodium,'' ''lower sodium,'' or ''lower in sodium'' may be used on the label
or in labeling of products, provided that: (i) The product contains at least 25
percent less sodium per reference amount customarily consumed than an
appropriate reference product as described in § 317.313(j)(1) and § 381.413(j)(1);
and (ii) As required in § 317.313(j)(2) and § 381.413(j)(2) for relative claims: (A)
The identity of the reference product and the percent (or fraction) that the sodium
differs between the two products are declared in immediate proximity to the most
prominent such claim (e.g., ''reduced sodium 'product', 50 percent less sodium
than regular 'product' ''); and (B) Quantitative information comparing the level of
sodium in the product per labeled serving size with that of the reference product
that it replaces is declared adjacent to the most prominent claim or to the nutrition
information (e.g., ''sodium content has been lowered from 300 to 150 mg per
serving'').  Product (2) Chicken Noodle 25% Less Sodium presents (A) and (B)
above in not easily legible boldface print in violation of 9 CFR § 381.413(j)(2).

**9 CFR § 317.362 and § 381.462 Nutrient Content Claims for Fat Content**

70.     The terms ''reduced fat,'' ''reduced in fat,'' ''fat reduced,'' ''less fat,''
''lower fat,'' or ''lower in fat'' may be used on the label or in labeling of products,
provided that: (i) The product contains at least 25 percent less fat per reference
amount customarily consumed than an appropriate reference product as described
in § 317.313(j)(1) and § 381.413(j)(1); and (ii) As required in § 317.313(j)(2) and §
381.413(j)(2) for relative claims: (A) The identity of the reference product and the
percent (or fraction) that the fat differs between the two products are declared in

immediate proximity to the most prominent such claim (e.g., ''reduced fat—50 percent less fat than our regular 'product' ''); and (B) Quantitative information comparing the level of fat in the product per labeled serving size with that of the reference product that it replaces is declared adjacent to the most prominent claim or to the nutrition information (e.g., ''fat content has been reduced from 8 g to 4 g per serving'').

**9 CFR § 317.313(j)(2), § 381.413(j)(2), and 21 U.S.C. § 601(n)(6): Legible Boldface Print and Conspicuousness**

71.    For products bearing relative claims: (i) the label or labeling must state the identity of the reference product and the percent (or fraction) of the amount of the nutrient in the reference product by which the nutrient has been modified, (e.g., ''50 percent less fat than 'reference product' '' or ''1⁄3 fewer calories than 'reference product' ''); and (ii) This information shall be immediately adjacent to the most prominent claim in easily legible boldface print or type, in distinct contrast to other printed or graphic matter.

21 U.S.C § 601(n)(6) provides that: "The term "misbranded" shall apply to any carcass, part thereof, meat or meat food product under one or more of the following circumstances:" "(6) *if any word, statement, or other information required by or under authority of this chapter to appear on the label or other labeling is not prominently placed thereon with such conspicuousness* (as compared with other words, statements, designs, or devices, in the labeling) and in such terms as to render it likely to be read and understood by the ordinary individual under customary conditions of purchase and use;" (Bold Italics added.)

**9 CFR § 317.363 and § 381.463 Nutrient Content Claims for "healthy"**

72.    The term "healthy," or any other derivative of the term "health," may not be used on the labeling of any meat (poultry) or meat (poultry) food product, provided

that "the product shall not contain more than 480 mg of sodium per reference amount customarily consumed, per labeled serving size,"  "The product has a reference amount customarily consumed greater than 30 g or greater than 2 tablespoons (tbsp) and contains 3 g or less of fat per reference amount customarily consumed."

**First Cause of Action**

**Violation of California's Unfair Competition Law, California Business and Professions Code § 17200 *et seq.* Unlawful Conduct Prong**

**(By Plaintiff Sue Shin, on Behalf of the Class)**

73.    Plaintiff re-alleges and incorporates by reference the above allegations contained in the paragraphs above as if fully set forth herein.

74.    California Business & Professions Code §17200 prohibits acts of unfair competition, which means and includes any "unlawful, unfair or fraudulent business act or practice" and any act prohibited by Cal. Bus. & Prof. Code §17500.

75.    Defendant violated Cal. Bus. & Prof. Code §17200's prohibition against engaging in an "*unlawful*" business act or practice by, *inter alia*, making the material misrepresentations regarding the CAMPBELL Products as set forth more fully elsewhere in this Complaint; 1750 *et seq.* (the CLRA); Cal. Bus. & Prof. Code §17500 (false advertising); 21 U.S.C. § 331(a); California Health and Safety Code §§ 110395, 110398.

76.    Plaintiff and Class Members have suffered injury in fact and have lost money as a result of Defendant's unlawful, fraudulent and unfair business practices and are therefore entitled to the relief available under Cal. Bus. & Prof. Code §17200, *et seq*.

77.    Plaintiff brings this claim on behalf of the California Subclass for violation of the "unlawful" prong of California's Unfair Competition Law.

78.    The acts, omissions, misrepresentations, practices, and non-disclosures of
Defendant, as afore-alleged, constitute "unlawful" business acts and practices in
that it violates the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 *et seq.*,
and its implementing regulations, and the Poultry Products Inspection Act
("PPIA"), 9 CFR § 381.461, § 381.462, § 381.413(j)(2), and § 381.463.

79.    Defendant's conduct is further "unlawful" because it violates California's
False Advertising Law, California Business and Professions Code § 17500 *et seq.*,
and California's Consumers Legal Remedies Act, California Civil Code § 1750 *et
seq.*, as discussed in the claims below.

80.    Defendant's conduct also violates California's Sherman Food, Drug, and
Cosmetic Law, California Health and Safety Code § 109875 *et seq.*, as afore-
alleged.

81.    Defendant's conduct also violates California Health and Safety Code
§110395 providing: "It is unlawful for any person to manufacture, sell, deliver,
hold, or offer for sale any food . . . that is falsely advertised."

82.    Defendant's conduct also violates California Health and Safety Code
§110398 providing: "It is unlawful for any person to advertise any food, drug,
device, or cosmetic that is adulterated or misbranded."

83.    Defendant's conduct also violates California Health and Safety Code §
110660 providing: "Any food is misbranded if its labeling is false or misleading in
any particular."

84.    Defendant's conduct of deception induces Plaintiff and the members of the
California Subclass to purchase the CAMPBELL Products that were of lesser value
and quality than advertised and labeled.

85.    Defendant's deceptive advertising and labeling caused Plaintiff and the
members of the California Subclass to suffer injury in fact and to lose money.  Had
Plaintiff and the members of the California Subclass been aware of Defendant's

false and misleading advertising and labeling tactics, they would not have purchased the CAMPBELL Products.

86.     In accordance with California Business and Professions Code section 17203, Plaintiff seeks an order enjoining Defendant from continuing to sell the CAMPBELL Products through unlawful, unfair, and/or fraudulent acts and practices and to commence a corrective labeling and advertising campaign.

87.     Plaintiff also seeks an order for the disgorgement and restitution of all monies from the sale of the CAMPBELL Products that Defendant unjustly acquired through acts of unlawful, unfair, and/or fraudulent competition.

## Second Cause of Action

## Violation of California's Unfair Competition Law, California Business and Professions Code § 17200 *et seq.* Unfair and Fraudulent Conduct Prongs (By Plaintiff Sue Shin, on Behalf of the Class)

88.     Plaintiff re-alleges and incorporates by reference the above allegations contained in the paragraphs above as if fully set forth herein.

89.     Defendant violated Cal. Bus. & Prof. Code §17200's prohibition against engaging in a "*fraudulent*" business act or practice by disseminating, through common advertising, untrue statements about the CAMPBELL Products.

90.     The foregoing conduct also constitutes "*unfair*" business acts and practices within the meaning of Cal. Bus. & Prof. Code §17200.  Defendant's practices offend public policy and are unethical, oppressive, unscrupulous and violate the laws stated.  Defendant's conduct caused and continues to cause substantial injury to Plaintiff and Class Members.

91.     The acts, omissions, misrepresentations, practices, and non-disclosures of Defendant, as alleged herein, constitute "fraudulent" business acts and practices,

because Defendant's conduct is false and misleading to Plaintiff and the members of the California Subclass.

92.     Defendant's labeling and marketing of the CAMPBELL Products is likely to deceive reasonable consumers about the total amount of sodium in the CAMPBELL Products.

93.     Defendant either knew or reasonably should have known that the claims on the labels of the CAMPBELL Products were likely to deceive reasonable consumers.

94.     In accordance with California Business & Professions Code section 17203, Plaintiff seeks an order enjoining Defendant from continuing to sell the CAMPBELL Products through unlawful, unfair, and/or fraudulent acts and practices and to commence a corrective advertising and labeling campaign.

95.     Plaintiff also seeks an order for the disgorgement and restitution of all monies from the sale of the CAMPBELL Products that were unjustly acquired through act of unlawful, unfair, and/or fraudulent competition.

## Third Cause of Action
## Violation of California's False Advertising Law, California Business and Professions Code § 17500 *et seq.*
## (By Plaintiff Sue Shin, on Behalf of the Class)

96.     Plaintiff re-alleges and incorporates by reference the above allegations contained in the paragraphs above as if fully set forth herein.

97.     California Business & Professions Code §17500 prohibits various deceptive practices in connection with the dissemination in any manner of representations which are likely to deceive members of the public to purchase products and services such as the CAMPBELL Products.

98.    Defendant disseminated, through common advertising, misleading statements about the CAMPBELL Products and Defendant knew or should have known that the CAMPBELL Products' label did not conform to the advertisements or representations regarding the CAMPBELL Products.  Plaintiff and the Class relied upon the advertisements and misrepresentations to their detriment.

99.    As alleged herein, Defendant, in its labeling and advertising of the CAMPBELL Products, makes misleading advertising claim, as it deceives consumers as to the total amount of sodium in the CAMPBELL Products.

100.   In reliance on these false and misleading advertising claims, Plaintiff and the members of the California Subclass purchased and used the CAMPBELL Products without the knowledge that the products contain a substantial amount of total sodium.

101.   Defendant knew or should have known that the labeling and marketing of the CAMPBELL Products was likely to deceive consumers.

102.   As a result, Plaintiff and the California Subclass members seek injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Defendant was unjustly enriched.

**Fourth Cause of Action**

**Violation of California's Consumers Legal Remedies Act, California Civil Code § 1750 *et seq.***

**(By Plaintiff Sue Shin, on Behalf of the Class)**

103.   Plaintiff re-alleges and incorporates by reference the above allegations contained in the paragraphs above as if fully set forth herein.

104.   This cause of action arises under the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §1750, *et seq.*  Plaintiff is a consumer as defined by Cal. Civ. Code §1761(d).  Defendant's CAMPBELL Products constitute

"products" as defined by Cal. Civ. Code §1761(a) and (b).  At all times relevant hereto, Defendant constituted "persons" as that term is defined in Cal. Civ. Code §1761(c), and Plaintiff's and Class Members' purchases of the CAMPBELL Products constitute "transactions," as that term is defined in Cal. Civ. Code §1761(e).

105.   Defendant violated and continues to violate the CLRA by engaging in the following deceptive practices specifically proscribed by Cal. Civ. Code §1770(a), in transactions with Plaintiff and Class Members that were intended to result or which resulted in the sale of the CAMPBELL Products to consumers:

(a) In violation of Cal. Civ. Code §1770(a)(5), Defendant's acts and practices constitute misrepresentations that the CAMPBELL Products in question have characteristics, benefits or uses which they do not have;

(b) In violation of Cal. Civ. Code §1770(a)(7), Defendant misrepresented that the CAMPBELL Products are of particular standard, quality and/or grade, when they are of another; and

(c) In violation of Cal. Civ. Code §1770(a)(9), Defendant advertised the CAMPBELL Products with the intent not to sell them as advertised or represented.

(d) In violation of Cal. Civ. Code §1770(a)(16), Defendant represented that "the subject of a transaction has been supplied in accordance with a previous representation when it has not."

106.   Defendant's representations were false, deceptive, and/or misleading and in violation of the CLRA.

107.   In addition, pursuant to Civil Code §1780(a)(2), Plaintiff is entitled to, and therefore seek, a Court order enjoining the above-described wrongful acts and practices that violate Cal. Civ. Code §1770:

(1) enjoining Defendant from continuing to engage in the deceptive practices described above;

(2) requiring Defendant to provide public notice of the true nature of the
CAMPBELL Products; and

(3) enjoining Defendant from such deceptive business practices in the future.

108.    Plaintiff and the Class are also entitled to recover attorneys' fees, costs,
expenses and disbursements pursuant to Cal. Civ. Code §§1780 and 1781.

109.    Pursuant to section 1782 of the CLRA, Plaintiff is hereby notifying
Defendant in writing of its particular violations of section 1770 of the CLRA and is
demanding, among other actions, that Defendant cease marketing the CAMPBELL
Products as set forth in detail above and correct, repair, replace, or otherwise
rectify the CAMPBELL Products that are in violation of section 1770 as set forth
in detail above.  (Exhibit 1.)  If Defendant fails to respond to Plaintiff's demand
within 30 days of this notice, pursuant to section 1782 of the CLRA, Plaintiff will
amend this Class Action Complaint to request, in addition to the above relief,
statutory damages, actual damages, punitive damages, interest, and attorneys' fees,
pursuant to sections 1780 and 1781.

### Fifth Cause of Action
### Unjust Enrichment
### (By Plaintiff, on Behalf of the Class)

110.    Plaintiff re-alleges and incorporates by reference the above allegations
contained in the paragraphs above as if fully set forth herein.

111.    Plaintiff brings this claim for unjust enrichment on behalf of the Class.

112.    As a direct and proximate result of Defendant's acts set forth herein,
Defendant has been unjustly enriched.

113.    As a result of Defendant's deceptive, fraudulent, and misleading labeling,
advertising, marketing, and sales of the CAMPBELL Products, Defendant unjustly

enriched itself at the expense of Plaintiff and the Class members, through Plaintiff's and the Class members' payment of the purchase price for the products.

114.    Under the circumstances, it would be against equity and good conscience to permit Defendant to retain the ill-gotten benefits it received from Plaintiff and the Class members, in light of the fact that the CAMPBELL Products that Plaintiff and the Class members purchased were not what Defendant purported them to be. Thus, it would be unjust or inequitable for Defendant to retain the benefit without restitution to Plaintiff and the Class members for the monies paid to Defendant for the CAMPBELL Products.

115.    Plaintiff and the Class members seek restitution of, disgorgement of, and/or the imposition of a constructive trust upon all profits, benefits, and compensation Defendant obtained from its improper conduct alleged herein.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays this Court enter a judgment against Defendant that:

1.    This action be certified and maintained as a class action under Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure and certify the proposed Class as defined, appointing Plaintiff as representatives of the Class, and appointing the attorneys and law firms representing Plaintiff as counsel for the Class;

2.    Awards compensatory, statutory and/or punitive damages.

3.    Awards Plaintiff and Class Members the costs of this action, including reasonable attorneys' fees and expenses;

4.    Orders Defendant to immediately cease its wrongful conduct as set forth above; enjoins Defendant from continuing to falsely market and advertise, conceal material information, and conduct business via the unlawful and unfair business acts and practices complained of herein; orders Defendant to engage in a corrective

notice campaign, and requires Defendant to reimburse to Plaintiff and all Class Members the purchase price paid for the CAMPBELL Products;

5.      Awards equitable monetary relief, including restitution and disgorgement of all ill-gotten gains, and the imposition of a constructive trust upon, or otherwise restricting the proceeds of Defendant's ill-gotten gains, to ensure that Plaintiff and Class Members have an effective remedy;

6.      Awards pre-judgment and post-judgment interest at the legal rate; and

7.      Such further legal and equitable relief as this Court may deem just and proper.

**JURY TRIAL REQUESTED**

Plaintiff demands a trial by jury on all issues so triable.

DATED: February 10, 2017                 LAW OFFICE OF JUAN HONG

/s/ Juan Hong
JUAN HONG
4199 Campus Drive Suite 550
Irvine, CA 92612
Telephone: (949) 509-6505
Fax: (949) 335-6647

**DECLARATION OF SUE SHIN PURSUANT TO CALIFORNIA CIVIL CODE § 1780(d)**

I, Sue Shin, declare as follows:

1.    I am Plaintiff in the above-entitled action.

2.    On October 11, 2016, I bought the Products (1), (2), (3), and (4) from Albertsons located at 1735 Artesia Blvd., Gardena, CA 90247.

    I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    Executed this 10th day of February, 2017, at Gardena, California.

DATED: February 10, 2017

Sue Shin

EXHIBIT  1

Juan Hong, A Law Corp, Law Office of Juan Hong
4199 Campus Drive Suite 550, Irvine, CA 92612
Telephone: (949) 509-6505, Fax: (949) 335-6647

February 10, 2017

**<u>VIA CERTIFIED MAIL (Return Receipt Requested)</u>**

Campbell Soup Company
1 Campbell's Place
Camden, New Jersey 08103

      RE: *Sue Shin v. Campbell Soup Company*

Dear Campbell Soup Company:

      Our law firm represents Sue Shin and all other consumers similarly situated in an action against Campbell Soup Company ("Defendant") arising out of, *inter alia*, misrepresentations by Defendant to consumers.

      Plaintiff's claim is essentially that, because defendant's labels did not comply with state and federal requirements regarding the disclosure statement, she could not see or did not understand the disclosure, and therefore was misled by the unlawful packaging and purchased the product based thereon. Defendant's products are technically misbranded. Plaintiff was misled as a result of the misbranding and suffered economic injury because she purchased the products she otherwise would not have.

      Plaintiff assert the "who, what, when, where, and how" to satisfy Federal Rule of Civil Procedure 9(b).

**who**: Defendant Campbell Soup Company.
**what**: misleading and misbranding labels in the following five products by Defendant ("the CAMPBELL Products"): (1) Cream of Mushroom 25% Less Sodium, (2) Chicken Noodle 25% Less Sodium, (3) Cream of Chicken 98% Fat Free, (4) Swanson Natural Goodness Broth Chicken 33% Less Sodium, (5) Cream of Mushroom 98% Fat Free. The misleading and misbranding labels of "25% Less Sodium," "33% Less Sodium," and "98% Fat Free" are presented without the disclosure statement required by the Food and Drug Administration. The products are not qualified to be healthy under 9 CFR section 381.463.
**when**: February 10, 2013 to the present;
**where**: front label of the CAMPBELL Products;

**how**: The statements are misleading because they are not accompanied by the disclosure statement and the products are not healthy because they contain sodium at high level.  It is unlawful that Defendant introduced the CAMPBELL Products into interstate commerce.  Plaintiff was fraudulently induced to buy unmarketable foods, the CAMPBELL Products.

Plaintiff Sue Shin and others similarly situated purchase the CAMPBELL Products unaware that they are not healthy due to high level of sodium.  Thus, the statements are false, misleading and reasonably likely to deceive the public.  The full claims, including the facts and circumstances surrounding these claims, are detailed in the Class Action Complaint, a copy of which is enclosed and incorporated by this reference.

Defendant's representations are false and misleading and constitute unfair methods of competition and unlawful, unfair, and fraudulent acts or practices, undertaken by Defendant with the intent to induce the consuming public to purchase the CAMPBELL Products.

Defendant violated and continues to violate the Consumers Legal Remedies Act (CLRA) by engaging in the following deceptive practices specifically proscribed by Cal. Civ. Code §1770(a), in transactions with Plaintiff and Class Members that were intended to result or which resulted in the sale or lease of goods or services to consumers:

(a) In violation of Cal. Civ. Code §1770(a)(5), Defendant's acts and practices constitute misrepresentations that the CAMPBELL Products have characteristics, benefits or uses which they do not have;

(b) In violation of Cal. Civ. Code §1770(a)(7), Defendant misrepresented that the CAMPBELL Products are of particular standard, quality and/or grade, when they are of another; and

(c) In violation of Cal. Civ. Code §1770(a)(9), Defendant advertised the CAMPBELL Products with the intent not to sell them as advertised or represented.

(d) In violation of Cal. Civ. Code §1770(a)(16), Defendant represented that "the subject of a transaction has been supplied in accordance with a previous representation when it has not."

Defendant's representations also constitute violations of California Business and Professions Code § 17200, *et seq*.

While the Complaint constitutes sufficient notice of the claims asserted, pursuant to California Civil Code § 1782, we hereby demand on behalf of our client and all others similarly situated that Defendants immediately correct and rectify this violation of California Civil Code § 1770 by ceasing the misleading marketing campaign and ceasing dissemination of false and misleading

information as described in the enclosed Complaint.  In addition, Defendants should offer to refund the purchase price to all consumer purchasers of the CAMPBELL Products, plus reimbursement for interest, costs, and fees.

Plaintiff will, after 30 days from the date of this letter, amend the Complaint without leave of Court, as permitted by California Civil Code § 1782, to include claims for actual and punitive damages (as may be appropriate) if a full and adequate response to this letter is not received.  These damage claims also would include claims under the Consumers Legal Remedies Act.  Thus, to avoid further litigation, it is in the interest of all parties concerned that Defendants address these violations immediately.

Defendants must undertake all of the following actions to satisfy the requirements of California Civil Code § 1782(c):

(1)    Identify or make a reasonable attempt to identify purchasers of the CAMPBELL Products for the three years prior to February 10, 2017;

(2)    Notify all such purchasers so identified that upon their request, Defendant will offer an appropriate remedy for its wrongful conduct, which can include a full refund of the purchase price paid for the CAMPBELL Products, plus interest, costs fees, by mailing them a notice via certified mail.  Provide this office with proof that you delivered the notice to everyone referenced;

(3)    Undertake (or promise to undertake within a reasonable time if it cannot be done immediately) the actions described above for all the CAMPBELL Products purchasers who so request; and

(4)    Cease from representing to consumers that CAMPBELL Products provides the benefits described in the aforementioned Defendant's labels, when there is no reasonable basis for so claiming, as more fully described in the enclosed Complaint.

We await your response.

Sincerely yours,
/s/ Juan Hong
Juan Hong
LAW OFFICE OF JUAN HONG
4199 Campus Drive Suite 550
Irvine, CA 92612

Enclosures

3